Jed W. Manwaring, ISB No. 3040
Jon T. Simmons, ISB No. 5006
Christy A. Kaes, ISB No. 4852
EVANS KEANE LLP
1161 West River Street, Ste. 100
P. O. Box 959
Boise, Idaho 83701-0959
Telephone: (208) 384-1800
Facsimile: (208) 345-3514
E-mail:  jmanwaring@evanskeane.com
         jsimmons@evanskeane.com
         ckaes@evanskeane.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BARBARA ANN GARDNER, individually,<br><br>Plaintiff,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS USA, INC.,<br>a Delaware corporation,<br><br>Defendant. | Case No. 1:18-cv-00019-EJL<br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight"), by and through its attorneys of record, Evans Keane, LLP, submits its Memorandum in Support of Defendant's Motion for Summary Judgment.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 1

# I.

## BACKGROUND[1]

This is a negligence case arising from Plaintiff's visit to the Harbor Freight store located on Fairview Avenue, in Boise, Idaho on February 3, 2017. (*See* SOF, pp.1-2.) Plaintiff fell shortly after entering the store, giving rise to her claim for damages. (*Id.*)

Although Plaintiff alleges that she fell on a "bunched up" rug or mat, neither Plaintiff nor her husband actually saw what, if anything, caused Plaintiff to fall. (SOF, pp.2-4.) In fact, the evidence in the record is undisputed: prior to Plaintiff's fall, there was no bunched up or wrinkled floor mat in the area where Plaintiff fell. (SOF, p.4-5.)

Based upon the foregoing undisputed evidence in the record and well-established Idaho precedent, Harbor Freight is entitled to judgment as a matter of law. Its Motion for Summary Judgment should be granted.

# II.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56(a) provides as follows:

> **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

---

[1] For the sake of brevity, Harbor Freight will not restate, in detail, all of the pertinent material facts in the record. For a full recitation of such facts, along with specific citations to evidence in the record, please see the separate Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ("SOF"), filed herewith.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

The basic standard governing motions for summary judgment is familiar: "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016) (internal quotation marks omitted).

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48 (1986). Rather, there must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id.* at 248. What is required to defeat summary judgment is evidence "such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015) (internal quotation marks omitted); *accord Anderson*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). On the other hand, the Supreme Court has made clear that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file "that a genuine dispute of material fact exists." *Celotex,* 477 U.S. at 324.

### III.

### ARGUMENT

A.  **Under Idaho Law, A Claim Of Negligence Requires Affirmative Proof Of The Existence Of A Duty And Breach Of That Duty.**

Under Idaho law, a cause of action for negligence requires proof of the following elements:

(1)   the existence of a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct;

(2)   a breach of that duty;

(3)   a causal connection between defendant's conduct and the resulting injury; and

(4)    actual loss or damage.

*Antim v. Fred Meyer Stores, Inc.*, 150 Idaho 774, 777, 251 P.3d 602, 605 (Ct. App. 2011).

Landowner liability cases involving business invitees injured on a defendant's property do not give rise to strict liability.  Instead, the Idaho Supreme Court has long held that "owners and occupiers of land will be under a duty of ordinary care under the circumstances towards invitees who come upon their premises."  *Harrison v. Taylor*, 115 Idaho 588, 595, 768 P.2d 1321, 1328 (1989).  In other words, the mere fact that an invitee suffered an injury on the defendant's premises is insufficient to establish liability.  Rather, to meet the elements of duty and breach, a plaintiff must prove that the defendant had actual or constructive knowledge of an actual dangerous condition that caused the plaintiff's injuries.  *Id.*

**B.    Plaintiff Has Not Produced And Cannot Produce Evidence That Harbor Freight Breached Any Duty, And That Such Breach Caused Her To Fall.**

In the present case, Plaintiff has not produced any evidence that a wrinkled or "bunched up" floor mat was present prior to her fall.

**1.    Contrary To The Allegations In Her Complaint, Plaintiff Has No Idea What Caused Her To Fall.**

The Plaintiff and her husband were recently deposed on August 28, 2017.  To her great credit, Mrs. Gardner was very forthright about the fact that she did not see any wrinkled or bunched up mat prior to her fall:

> Q.    Can you describe for me how you fell?
> A.     Something stopped my feet, and I went straight to the floor.  Just like my hands – I put my hands out to catch me, and I went face first.  It was just a "body plant" onto the concrete floor.
>
> ***

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Q.    Draw for me the layout of the area where you fell with the – I believe there were two mats as you walk in the front door.
A.     I have no idea.
Q.    You have no idea?  You don't have any recollection of—
MR. DOWDLE:  Do we have photos that we can have her draw on or –
THE WITNESS:  Well, I saw the deal that showed two mats there.
      I did not see what I caught my feet in.
Q.  (BY MR. SIMMONS)  Okay.  So you didn't see the – particularly notice the layout of the mats, that type of thing?
A.    No.  I was looking at the people over there at the checkout, and where I was headed.

(*See* Statement of Material Facts, pp.2-3.)  In fact, not only was Plaintiff was looking elsewhere,

she actually has no idea what caused her to fall:

A.    I was looking over at the checkout deal on the left because I was going to go behind it – as I did many times – between the wall and the checkout deal, you know, it's kind of a shortcut to go through there to where the engines were.
      I thought, "No, there's too many people, and I'll go around on the other side."
      About that time is when I was going over – and it just felt like somebody had grabbed ahold of me and nailed my feet to the floor because I was going over, and there was no tripping – nothing.
Q.    Well, did your foot catch something?  Describe it.  Do you just simply not recall?
A.    **I don't know**.
Q.    You just remember going down?
A.    Yes.  I was walking, and then all of a sudden I wasn't walking.

***

Q.    But, as you sit here today, just don't recall what caused you to go over?  It feels like something grabbed you?
A.    My feet just stopped instantly.  I mean, it was just like somebody had nailed my feet to the floor because I just went over.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

(*Id.* at p. 3 (emphasis added).)

     **2.**      **Plaintiff's Husband Did Not See Plaintiff Fall Or What Caused Her To Fall.**

Plaintiff's husband, who was walking behind Plaintiff when she fell, likewise did not see what caused her to fall, and only assumed Plaintiff tripped on a floor mat. (*See* Statement of Facts, p.4.) Significantly, Mr. Gardner admitted during his deposition that his assumption that a bunched up mat caused Plaintiff to fall was based upon an observation made well after-the-fact, after the chaos and commotion surrounding the accident had settled down:

> Q.     As you sit here today – and I think Counsel asked you, and we are trying to figure this out.
>      You didn't actually see her trip on the rug?
> A.     I was following her.
>      We was, like she said, we was on a mission.
>      All of a sudden, right in front of me she went down.
> Q.     Okay.
> A.     **After the commotion kind of settled down a little bit**, I looked around to see what had happened, and that's what I observed.

( *Id.* (emphasis added).)

     **3.**      **No Harbor Freight Employee Saw A Wrinkled Or Bunched Up Floor Mat Prior To Plaintiff's Fall, Despite The Fact That The Two Employees Working On Either Side Of The Area Where Plaintiff Fell Were On The Lookout For Such Problems.**

The evidence in the record is undisputed that there was no wrinkled or bunched up floor mat for Plaintiff to trip on and of which Harbor Freight had a duty to warn. Harbor Freight employee Kachina Ketchum was working at cash register 3 at the front of the store when Plaintiff entered and fell. She had an unobstructed view of the area where Plaintiff fell, including all of the floor mats and the metal coupon display stand. (*See* SOF, p. 5.) Ms. Ketchum confirmed the practice at Harbor Freight, and her own personal practice when working at one of the cash registers, was to frequently scan the floor mats and the area around the floor mats, and to immediately fix

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 7

any problems with the floor mats should they exist, including straightening or flattening a floor mat if it is folded or bunched up. (*Id.*) She specifically looked at the floor mats and surrounding area just before Plaintiff fell on February 3, 2017, and did not see that any mat was folded, wrinkled or bunched up. (*Id.*)

Former Harbor Freight employee Thomas McNeill was also working at the front of the Harbor Freight store at the time Plaintiff fell. (*Id.*) Like Ms. Ketchum, Mr. McNeill recalls looking at the mats just prior to Plaintiff's fall and not seeing that any mat was wrinkled or bunched up. (*Id.*)

**C.    Based Upon The Undisputed Evidence In The Record, Harbor Freight Is Entitled To Judgment As A Matter Of Law.**

The facts in the present case are very similar to those in *Antim v. Fred Meyer, supra.* In that case, the plaintiff (Antim) was shopping with her spouse in a Fred Meyer grocery store when she tripped on a folded mat in a coffee aisle. She filed suit against both Fred Meyer and Cleaning Services Group, Inc., the company responsible for cleaning the store's floors. *Id.* at 775, 251 P.3d at 603. The accident happened at 10:30 p.m. The store manager stated in his affidavit that he recalled seeing the floor mat lying flat on the floor between 10:10 and 10:15 p.m. *Id.* at 776, 251 P.3d at 604. Antim testified she did not notice whether the mat was folded over prior to her fall. *Id.* Based upon that evidence, the defendants prevailed at summary judgment. *Id.*

On appeal, the Idaho Court of Appeals concluded that there was no evidence presented that the defendants possessed actual knowledge of the existence of a folded mat prior to Antim's fall. *Id.* at 780, 251 P.3d at 608. On the more difficult question of constructive notice, Antim argued that regardless of whether the defendants had actual knowledge, the foregoing evidence raised a factual question regarding whether they nonetheless should have been aware of the hazard. *Id.* The Court of Appeals disagreed:

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

… As mentioned above, it was Antim's burden to present, via depositions, discovery responses or affidavits, that a genuine issue of fact existed as to how long the mat was folded prior to her fall. *See Sanders,* 125 Idaho at 874, 876 P.2d at 156. However, like the plaintiff in *Giles,* Antim failed to present any evidence to demonstrate when the mat was folded in order to establish how long it remained in such a dangerous position prior to her fall. Antim did not claim to know when the mat was folded and did not argue that evidence could be produced at trial to indicate the length of time during which the hazard existed. Antim's contention that the mat remained folded for twenty-five minutes is not based on facts or personal observation. Rather, her contention is based on pure speculation that the mat *could have* been folded over soon after the manager's inspection. Antim's suggestion that the mat was folded for at least twenty-five minutes prior to her fall is not supported by the record and is not sufficient to demonstrate that Fred Meyer or CSG should have been aware of the mat's unsafe condition.

Further, Antim has failed to demonstrate that the nature of the folded floor mat was such that Fred Meyer and CSG should have been aware of the hazard, regardless of the length of the hazard's presence in the aisle. Unlike the ice cream demonstration in *McDonald* or the pizza sale in *Jasko,* **the existence of a folded mat in a store aisle is not the type of hazard that would, in and of itself, provide a store with constructive notice of a dangerous condition**. Therefore, the record does not present a genuine issue of material fact as to whether Fred Meyer and CSG breached a duty of care to Antim.

*Id.* at 781, 251 P.3d at 609 (some emphasis in original).

Antim provided deposition testimony which established that "she did not see the mat before she fell, did not know if it was folded over before she fell, did not see anyone else in the aisle prior to her fall, and could not explain how the mat became folded over." *Id.* at 779, 251 P.3d at 606. The court also found that the defendants did not have actual knowledge of the folded mat: "…there was no evidence presented that Fred Meyer or CSG were otherwise notified of the folded mat prior to Antim's fall. Antim presented no more than a mere scintilla of evidence regarding how the mat became folded." *Id.*

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

As in *Antim*, Mrs. Gardner cannot present any evidence that a mat was folded or bunched up prior to her fall; neither she nor her husband saw a bunched up mat prior to Plaintiff's fall, neither she nor her husband saw what, if anything, caused her to fall, and the only affirmative evidence in the record on that issue is that there was, in fact, no folded or bunched up mat prior to her fall. There are any number of possible explanations for Plaintiff's accident that do not involve a wrinkled or bunched up floor mat, including the fact that Mrs. Gardner abruptly changed her mind about the route through the store she planned to take, the fact that she was shuffling her feet at the end of a long and tiring day, and the fact that she was not looking in the direction she was traveling. To conclude the accident was caused by a wrinkled floor mat would be an exercise in pure speculation. Harbor Freight's Motion for Summary Judgment should be granted.

## IV.

## CONCLUSION

Based upon the foregoing, and because no genuine issues of material fact exist, Defendant Harbor Freight is entitled to judgment on Plaintiff's claims as a matter of law. It respectfully requests that its Motion for Summary Judgment be granted.

DATED this 31st day of October, 2018.

EVANS KEANE LLP

By:     /s/ Jon T. Simmons
         Jon T. Simmons, of the Firm
         *Attorneys for Defendant*

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of October, 2018, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic filing.

Warren W. Dowdle
wwd@litsterfrost.com

Laurie Litster Frost
laurie@litsterfrost.com

       /s/ Jon T. Simmons
Jon T. Simmons

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11