**Jed W. Manwaring, ISB No. 3040**
**Jon T. Simmons, ISB No. 5006**
**Christy A. Kaes, ISB No. 4852**
**EVANS KEANE LLP**
**1161 West River Street, Ste. 100**
**P. O. Box 959**
**Boise, Idaho 83701-0959**
**Telephone: (208) 384-1800**
**Facsimile: (208) 345-3514**
**E-mail:  jmanwaring@evanskeane.com**
**jsimmons@evanskeane.com**
**ckaes@evanskeane.com**

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **BARBARA ANN GARDNER, individually,** | **Case No. 1:18-cv-00019-EJL** |
| **Plaintiff,** | |
| **vs.** | **DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **HARBOR FREIGHT TOOLS USA, INC., a Delaware corporation,** | |
| **Defendant.** | |

JON T. SIMMONS, declares and states as follows:

1.      I am counsel of record for the above-named Defendant and have personal knowledge of the facts stated herein.  I have custody and control of documents produced in the course of discovery and served on me or upon opposing counsel.

2.      Attached hereto as Exhibit A are true and correct copies of excerpts from the Deposition of Barbara Ann Gardner taken on August 28, 2018.

DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 1

3.    Attached hereto as Exhibit B are true and correct copies of excerpts from the Deposition of Clifford Neale Gardner taken on August 28, 2018.

4.    Attached hereto as Exhibit C are true and correct copies of photographs which were marked as Exhibit 1 to the Deposition of Barbara Ann Gardner taken on August 28, 2018.

Pursuant to 28 U.S.C. §1746, I declare, certify, verify, or state under penalty of perjury that the foregoing is true and correct.

DATED this 31st day of October, 2018.

EVANS KEANE LLP


By:    /s/ Jon T. Simmons
        Jon T. Simmons, of the Firm
        *Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of October, 2018, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic filing.

Warren W. Dowdle
wwd@litsterfrost.com

Laurie Litster Frost
laurie@litsterfrost.com


        /s/ Jon T. Simmons
        Jon T. Simmons


DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 2

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BARBARA ANN GARDNER,            )

individually,                   ) Case No. 1:18-CV-00019-EJL

        Plaintiff,            )

vs.                             )

HARBOR FREIGHT TOOLS USA, INC., )

a Delaware corporation,         )

        Defendant.            )

_____

DEPOSITION OF BARBARA ANN GARDNER

TAKEN AUGUST 28, 2018

REPORTED BY:

BARBARA BURKE, CSR NO. 463

Notary Public

A.   That's what they call it, yes.  It's at Federal Way and Highway 21.

Q.   When you were walking in the store, you said there weren't many people there?

A.   There was some people checking out.  I don't know how many -- I would say four -- three or four -- checking out over on the left.  I think there was some checking out on the right.

As I was going down, I seen the people.

When I went into the store, I went to the left because the engines are over behind the checking deal -- the checkout over there on the left, and that's where I was headed.

Q.   Was your husband walking with you?

A.   He was behind me.  He had held the door open for me.

Q.   How far behind would you estimate he was?

A.   I don't know.

Q.   So you don't know where he was at when you fell?

A.   He was behind me, but I don't know how many feet or inches.

Q.   Can you describe for me how you fell?

A.   Something stopped my feet, and I went straight to the floor.  Just like my hands -- I put my hands out to catch me, and I went face first.  It was just a

"body plant" onto the concrete floor.

Q. Did you fall flat -- or were you on your knees with your hands up?  How did you fall?

A. I'm not going to do it again to see how I fell.

Q. Do you recall how you fell?

A. Just my whole body just went down.

I don't know -- I think that my left knee hit the floor first because I felt or heard something pop. It was a big, loud pop.  I knew that I had done something -- that I had broke something.

That was before my head hit the deal that they had their flyers in.  They have a big bin -- it's not a bin -- like a magazine rack that they put their flyers in.

The rod is probably about that big around (indicating little finger).

That's, evidently, what I hit and when I cut my head open.

I don't remember hitting it.  I think that it knocked me out because I asked Neale -- I said, "Did you roll me over?" because I remember when I woke up I was on my side, and everything was quiet.  I mean, it was just -- there was no sound.  Everything was just absolutely quite.

I thought, "Am I dead?" because I didn't know what was going on.  I thought -- that was my very first

and my hands.

Then, pretty soon, the firemen came and the ambulance people came.

Q.  How good of an artist are you?

A.  "How good of an artist"?

Q.  I would like you to draw a diagram for me if you feel up to it.

A.  Okay.  This ought to be cute.  All right.

What am I drawing?

Q.  Draw for me the layout of the area where you fell with the -- I believe there were two mats as you walk in the front door.

A.  I have no idea.

Q.  You have no idea?  You don't have any recollection of --

MR. DOWDLE:  Do we have photos that we can have her draw on or --

THE WITNESS:  Well, I saw the deal that showed two mats there.

I did not see what I caught my feet in.

Q.  (BY MR. SIMMONS)  Okay.  So you didn't see the -- particularly notice the layout of the mats, that type of thing?

A.  No.  I was looking at the people over there at the checkout, and where I was headed.

like I was miles away from that counter, and that looks like about what it is.

Q. (BY MR. SIMMONS) All right. Let's go through and describe the document, first of all.

Exhibit 1 is a series of photographs that I believe relate to your accident at Harbor Freight; is that correct?

A. It looks like it, yes.

Q. And on the first page, the bottom photograph appears to depict yourself lying on the floor --

A. Yes.

Q. -- as does the first photograph on the following page; correct?

A. Now, there was something in between me and the guy -- I think -- when he was trying to help clean me up.

Q. You and which guy?

A. The guy from Harbor Freight. I think he was from Harbor Freight -- the guy that had gotten the towels.

Q. What kind of "something" are you thinking of?

A. Well, the rack or something. I just remember something being there.

MR. GARDNER: Right here.

THE WITNESS: Was that it? I remember him leaning over something.

They had, evidently, just moved that rack so they could get in there because I know the fireman was behind me -- he was behind my head up here when I was talking to him.

Q.    (BY MR. SIMMONS)  Could you circle the rack that you are describing on this first page in the bottom photograph?

Could you circle the rack that you are describing that you hit your head on?

A.    Is that it right there?  I think.

MR. GARDNER:  I think so.

(Discussion.)

Q.    (BY MR. SIMMONS)  If you want to try it with a blue "Sharpie," that might make it a little bit easier to see?

A.    (Complied.)

Q.    Okay.  And then, in that same photograph, do you believe that where you are lying in that photograph is where you fell?

A.    As far as I know, it is, yeah, because nobody moved me.

Q.    But it appears that someone must have moved the rack out of the way.

A.    Yes.

Q.    Okay.  Where would the rack, to the best of

EXAMINATION

QUESTIONS BY MR. DOWDLE:

Q.   Barbara, when you walked into the store, you have testified earlier that you were looking off into a different direction.

As you sit here today, do you know if your foot caught something?

Describe for me -- I'm trying to recall what you recall.

A.   I was looking over at the checkout deal on the left because I was going to go behind it -- as I did many times -- between the wall and the checkout deal, you know, it's kind of a shortcut to go through there to where the engines were.

I thought, "No, there's too many people, and I'll go around on the other side."

About that time is when I was going over -- and it just felt like somebody had grabbed ahold of me and nailed my feet to the floor because I was going over, and there was no tripping -- nothing.

Q.   Well, did your foot catch something?  Describe it. Do you just simply not recall?

A.   I don't know.

Q.   You just remember going down?

A.   Yes.  I was walking, and then all of a sudden

I wasn't walking.

Q.  Okay.

A.  I was headed down to the floor.

I know that I put my hands down because when I was in the hospital I had a purple deal here, a line where it had hit the stand evidently, and also on this one, and all of this area here was all purple.

Q.  Okay.

A.  Why I didn't break my wrists, I have no idea.

Q.  But, as you sit here today, just don't recall what caused you to go over?  It feels like something grabbed you?

A.  My feet just stopped instantly.  I mean, it was just like somebody had nailed my feet to the floor because I just went over.

MR. DOWDLE:  Okay.  All right.  I think that's all I've got.

MR. SIMMONS:  Nothing further.

(Discussion.)

(Transcript ordered by Jon T. Simmons.)

(Signature requested; read and sign secured by sending a read-only electronic copy to Warren W. Dowdle.)

(Deposition concluded at 11:33 a.m.)

(208)345-9611      M & M COURT REPORTING (208)345-8800 (fax)

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


BARBARA ANN GARDNER,                )

individually,                       ) Case No. 1:18-CV-00019-EJL

              Plaintiff,            )

vs.                                 )

HARBOR FREIGHT TOOLS USA, INC., )

a Delaware corporation,             )

              Defendant.            )

_____



DEPOSITION OF CLIFFORD NEALE GARDNER

TAKEN AUGUST 28, 2018




REPORTED BY:


BARBARA BURKE, CSR NO. 463


Notary Public

A.   Not immediately, no.

Q.   Okay.  When you say, "not immediately," what do you mean by that?

A.   After she fell, obviously, I was trying to get her bleeding stopped because she was bleeding profusely.  You know, head injuries are real bad for that.

Q.   So pretty chaotic right then?

A.   Right.  I couldn't get my hands on anything -- a towel whatever -- to get it stopped.  We just did what we could.

I have a certain amount of training for immediate first aid in an injury.  We trained for this in our logging business which we are associated with.

Anyway, after I kind of got that under control and some of the people was there to help me -- brought me some towels to help me get the blood stopped -- I looked around to see what the hell had happened.

At that point, I saw the carpet all wrinkled up.  You can't see it in the picture because it had been straightened out from then, but you can still see where that thing was sticking up.

That thing was sticking up two to three inches from the traffic going in and out during the day, anyway, so I surmised that was what caused her to fall.

Q.   So you assumed that's what the cause was?

Page 8

A.   Yes.

Q.   You did not see that prior to her fall?

A.   I probably did.  I just -- you know, when you walk into a place, you're looking around and you're seeing things.  I think it caught my eye about the same time she fell.

Q.   You think -- or do you know?

A.   How the hell does one know?

Like I said, I looked around to see what had happened, and that's what I saw.

Q.   If you look at the first page of Exhibit 1, this bottom picture that I believe depicts your wife on the floor, is that where she fell -- or was she moved to there?

A.   She fell right about where that guy is standing.

Q.   Okay.  So closer to the circle?

A.   Yes --

Q.   Okay.

A.   -- because she had rolled over.  I don't remember whether I rolled her over.

Anyway, she was face down.  Obviously, she said something about her leg had -- something happened to her leg.

I had to get her over so I could get the bleeding stopped.  It was running in her ear and -- anyway, it

EXAMINATION

QUESTIONS BY MR. DOWDLE:

Q.   This picture that's marked as Exhibit 1, the rug that's bunched-up -- you can see a little bit of it.

MR. DOWDLE:  Counsel, I don't know if -- I'll point it out to you.

Q.   (BY MR. DOWDLE)  There's a little bit of a kind of a bunching-up there right at the very front of that rug.  Do you see that?

A.   Yes.

Q.   When you looked back and you looked at the rug, was it any different than you see it in this picture?

A.   Oh, yes, quite different.

Q.   Tell me about that.

A.   It was wrinkled-up.  It had two to three-inch folds sticking up all around the edges.

Q.   So is it your testimony that something happened to the rug in between the time that this photograph was taken --

A.   Yes.

Q.   -- and when your wife tripped on that?

A.   Yes.

Q.   As you sit here today -- and I think Counsel asked you, and we are trying to figure this out.

You didn't actually see her trip on the rug?

A.  I was following her.

We was, like she said, we was on a mission.

All of a sudden, right in front of me she went down.

Q.  Okay.

A.  After the commotion kind of settled down a little bit, I looked around to see what had happened, and that's what I observed.

I told one of the store people there about it --

Q.  About the rug?

A.  -- in not-so-kind words.

Q.  Okay.  Did you see -- was there any fluid, or any water, or any substance on the floor --

A.  No.

Q.  -- at or near where she fell?

A.  No.

Q.  Okay.  Just the rug bunched-up?

A.  Just the rug bunched-up.

MR. DOWDLE:  Okay.  That's all I've got.

MR. SIMMONS:  I have nothing else.

(Discussion.)

(Transcript ordered by Jon T. Simmons.)

(Signature requested; read and sign secured by sending a read-only electronic copy to Warren W. Dowdle.)

(Deposition concluded at 11:54 a.m.)

# EXHIBIT C





Exh. No. 1
Date 8-28-18
Name GARDNER
M & M Court Reporting

HarborFreight 0050





HarborFreight 0051





HarborFreight 0052