UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF IDAHO

BARBARA ANN GARDNER, individually,

    *Plaintiff*,

v.

HARBOR FREIGHT TOOLS USA, INC., a Delaware corporation,

    *Defendant*.

Case No.: 1:18-CV-0019-EJL

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Defendant Harbor Freight Tools USA, Inc.'s Motion for Summary Judgment. (Dkt. 14.) The motion is now ripe. Having fully reviewed the docket herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decision-making process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## BACKGROUND

Plaintiff Barbara Ann Gardner was shopping with her husband at a Harbor Freight Tools USA, Inc. ("Harbor Freight") store located on Fairview Avenue in Boise, Idaho, on February 3, 2017. Upon entering the store, she tripped and fell to the ground.

On November 1, 2017, Gardner filed a complaint in Ada County District Court of the State of Idaho alleging a claim of common law negligence against Harbor Freight.

ORDER-1

Gardner alleged that Harbor Freight breached its duty of care to maintain the store premises in a reasonably safe condition and/or to warn of hidden or concealed dangers of which it was or should have been aware. Specifically, Gardner contended that Harbor Freight left an entryway floormat bunched up and the bunched up floormat was dangerous and/or presented an unreasonable risk of harm to Gardner and the public.

Harbor Freight filed a motion for summary judgment. In support of its motion, Harbor Freight included declarations of two store employees on duty when the accident occurred and excerpts from Gardner's and her husband's depositions. In the employees' declarations, both employees averred that they inspected the store entryway immediately prior to Gardner's entrance and recalled seeing that the entryway floormats were not folded, wrinkled, or bunched up. In addition, Harbor Freight's company practice is for employees to frequently scan the floormats and surrounding area and to immediately fix any problems with the floormats should they exist. Both employees averred they followed that practice.

In her deposition, Gardner stated that she did not see what she tripped over and did not know what caused her to fall.

> Q. Can you describe for me how you fell?
> A. Something stopped my feet, and I went straight to the floor. Just like my hands—I put my hands out to catch me, and I went face first. It was just a "body plant" onto the concrete floor.
> ***
> Q. Draw for me the layout of the area where you fell with the—I believe there were two mats as you walk in the front door.
> A. I have no idea.
> Q. You have no idea? You don't have any recollection of—. . .
> THE WITNESS: Well, I saw the deal that showed two mats there. I did not see what I caught my feet in.

ORDER-2

> Q. (BY MR. SIMMONS) Okay. So you didn't see the—particularly notice the layout of the mats, that type of thing?
> A. No. I was looking at the people over there at the checkout, and where I was headed.

(Ex. A, Barbara Gardner Depo, 43:22–44:1; 46:10–25.)

> Q. Well, did your foot catch something? Describe it. Do you just simply not recall?
> A. I don't know.
> Q. You just remember going down?
> A. Yes. I was walking, and then all of a sudden I wasn't walking.
> ***
> Q. But, as you sit here today, just don't recall what caused you to go over? It feels like something grabbed you?
> A. My feet just stopped instantly. I mean, it was just like somebody had nailed my feet to the floor because I just went over.

(*Id.* at 75:21–76:1; 76:10–15.)

In his deposition, Gardner's husband stated he did not see what Gardner tripped over either. But her husband submitted a declaration stating that although he did not see what his wife caught her foot on, he later noticed the floormat near the front door was "significantly bunched up and completely rippled in several places," and he remembered the EMT professionals had a difficult time getting a gurney over the bunched up carpet. (Dkt. 16-1, Declaration of Clifford N. Gardner, ¶¶ 4, 6).) He did not see any other thing that Gardner may have tripped over, such as liquid or untied shoelaces, and concluded that the floormat must have caused Gardner to fall.

On January 16, 2018, Harbor Freight removed the case from the Ada County District Court of the State of Idaho to the District Court for the District of Idaho, based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(b).

ORDER-3

On October 31, 2018, Harbor Freight filed a motion for summary judgment on the grounds that neither Gardner nor her husband saw what, if anything, caused the Plaintiff to fall, and that two of its employees averred there was no bunched up or wrinkled floormat in the area prior to Gardner's fall.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor," *id.*, and the non-moving party "is entitled to all reasonable inferences in [her] favor." *Devereaux v. Abbey*, 263 F.3d 1070, 1080 (9th Cir. 2001) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material facts. *Id.* at 1076. To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). Once the moving party carries its initial burden, "the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Deveraux*, 263 F.3d at 1076 (citing Fed. R. Civ. P. 56(e)).

ORDER-4

Where the party that has the burden of proof at trial does not make a showing sufficient to establish the existence of an element essential to that party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citations omitted). Thus, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*.

## DISCUSSION

Harbor Freight moves for summary judgment on the grounds that Gardner has not produced evidence that a floormat at Harbor Freight was bunched up prior to her fall, does not know what she tripped over, and cannot establish that Harbor Freight had actual or constructive knowledge that its floormat was bunched up and posed a dangerous condition. (Dkt. 14-2). In response, Gardner maintains it is foreseeable to shopkeepers that floormats can pose a hazard to customers when bunched up and that her husband, while not seeing what Gardner caught her foot on, observed after her fall that the entryway floormat was bunched up. (Dkt. 16.)

In Idaho, a negligence cause of action requires proof of the following: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Griffith v. JumpTime Meridian, LLC*, 393 P.3d 573, 575 (Idaho 2017).

ORDER-5

1. *Duty*

"Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury." *Stephens v. Stearns*, 678 P.2d 41, 48 (1984). When a negligence cause of action is based on premises liability, the duty is determined by the status of the person injured on the land (i.e., whether the person is an invitee, licensee, or trespasser). *Holzheimer v. Johannesen*, 871 P.2d 814, 816 (1994). An invitee is defined as "one who enters the premises of another with the owner's express or implied consent for the mutual benefit of the entrant and the owner, or for a purpose connected with the business in which the owner is engaged." *Brooks v. Wal-Mart Stores, Inc.*, 423 P.3d 443, 449 (Idaho 2018).

Harbor Freight does not contest Gardner's status as an invitee on the day of her accident. Traditionally, there are two kinds of duties an Idaho landowner owes to an invitee: "to keep the premises reasonably safe, and to warn of any concealed dangers which the landowner knows of or should have known of upon reasonable investigation." *Stem v. Prouty*, 272 P.3d 562, 566 (Idaho 2012) (citation omitted).

2. *Breach of Duty*

"To establish a prima facie negligence case, the invitee also must show that the landowner knew, or in the exercise of reasonable care should have known, of the alleged dangerous condition." *Shea v. Kevic Corp.*, 328 P.3d 520, 528 (2014). There are two types of dangerous conditions: (1) nonrecurring or isolated conditions and (2) recurring or continuing conditions. *Id*. For nonrecurring or isolated conditions, the invitee has to show

ORDER-6

actual or constructive notice of the *specific* dangerous condition. *Id*; *see e.g.*, *Tommerup v. Albertsons's, Inc.*, 607 P.2d 1055, 1057–58 (1980) (finding a cupcake wrapper discarded near a parking lot to be an isolated condition). For recurring or continuing conditions, the invitee must show "that the operating methods of the landowner or possessor are such that dangerous conditions are continuous or easily foreseeable." *Shea*, 328 P.3d at 528 (internal quotation marks and citations omitted); *see e.g.*, *McDonald v. Safeway Stores, Inc.*, 707 P.2d 416, 419 (1985) (finding that a trial court could not conclude, as a matter of law, that the presence of ice cream on a grocery store's floor during an ice cream demonstration for children and adults was an isolated incident); *All v. Smith's Mgmt. Corp.*, 708 P.2d 884, 887 (1985) (finding the formation of potholes was recurring incident and "[i]t was enough to show that [the defendants] were aware of the continuous formation of potholes in the parking lot through the winter and spring" in order to create an issue of material fact to be submitted to a jury). Regardless of the type of dangerous condition, the invitee must "show actual or constructive knowledge on behalf of the landowner to establish a prima facie negligence claim regardless of the nature of the condition." *Shea*, 328 P.3d at 528.

Neither party disputes that Harbor Freight lacked actual knowledge of the alleged bunching of the floormat at issue. Thus, the question turns to whether Harbor Freight had constructive knowledge of the condition. Harbor Freight argues that the Court should look to *Antim v. Fred Meyer Stores, Inc.*, where the Idaho Court of Appeals held that "[u]nlike the ice cream demonstration in *McDonald* . . . the existence of a folded mat in a store aisle is not the type of hazard that would, in and of itself, provide a store with constructive notice of a dangerous condition." 251 P.3d 602, 610 (Idaho Ct. App. 2011). Because the *Antim*

ORDER-7

court treated the folded floor mat as an isolated condition, it affirmed the district court's grant of summary judgment in favor of the store as the plaintiff was unable to present evidence that the store had constructive notice of the existence of the specific folded mat at issue. *Id*.

The evidence in this case is largely uncontested, and construed in Gardner's favor shows that: (1) Harbor Freight has floormats near the store's entryway; (2) Harbor Freight has policies in place for employees to police areas surrounding floormats searching for problems with the floormats and to fix any problems that exist by straightening or flattening floormats as needed; (3) two of Harbor Freight employees scanned the floormats near the store's entryway immediately prior to Gardner's fall and saw no issues with the floormats; and (4) Gardner slipped in in the vicinity of the floormats near the store's entryway while employees were in the general vicinity.

The instant case is more like the isolated condition in *Tommerup* and *Antim* than Idaho's "operating method" negligence cases. While a pothole may form in almost any parking lot, *Smith's Mgmt. Corp.*, 708 P.2d 884, and children often drop wet or sticky items on the ground, *McDonald*, 707 P.2d 416, those cases all had something more than the particular hazard on that particular day (knowledge that potholes saturated the parking lot or that ice cream was sitting long enough to melt after being handed out to children). As with *Tommerup*, the record here is "devoid of evidence indicating the condition which caused [the plaintiff's] injury to have been other than an isolated incident." 607 P.2d at 1058. No doubt floormats bunch up in Harbor Freight, just as litter existed at the threshold of Albertson's in *Tommerup*. However, the mere presence of a bunched floormat is a

condition that may occur temporarily in any public place of business and thus something more is needed to assign liability. *See Johnson*, 423 P.3d at 1010 (holding that "something more is needed" to assign liability when there is a temporary presence of a slippery substance on the floor because "[t]o hold otherwise would mean every store that deals in liquids and has a cleanup policy recognizing the dangerousness of spills would be liable for every spill anywhere in the store almost instantly"). Reasonable opportunity must be provided the defendant to prevent such occurrence. *Tommerup*, 607 P.2d at 1058 (stating it would be unreasonable to impose liability upon a defendant shopkeeper if a customer, shopping in its store, discarded a piece of litter in an aisle upon which a second customer slipped and fell five seconds later).

"Something more" is missing in this case. To hold otherwise would mean every store that has floormats and has a policy recognizing the dangerousness of bunched up floormats would be liable for every wrinkle in a floormat anywhere in the store almost instantly. Gardner argues that Harbor Freight's floormats should have been tacked down or secured to the floor but provides no supporting sources for her contention that the only way a shopkeeper may fulfill its duty to invitees is to secure floormats to the ground rather than have employees frequently check if there are any problems with the floormats. Gardner has failed to provide evidence for her contention that Harbor Freight's allowance of unsecured floormats in a store, combined with its implicit acknowledgement that bunched floormats are a potential danger to customers, generally imputes knowledge of a recurring or continuing dangerous condition. *See also Johnson*, 423 P.3d at 1010 (holding that an unidentified liquid on the ground for an unknown time in a less-frequently-traveled

ORDER-9

aisle where there was no obvious source of liquid fell short of triggering a duty on Wal-Mart's part, even though Wal-Mart knew that spills occurred in its store and were a problem). Therefore, the allegedly bunched rug at Harbor Freights was not a recurring or continuing dangerous condition.

On the isolated condition theory of liability, Gardner has failed to provide evidence that Harbor Freight had constructive knowledge of a specific floormat bunched in the entry. Constructive notice is simply knowledge of a condition that the exercise of reasonable care would have revealed. *Smith's Mgmt. Corp.*, 708 P.2d at 886. Gardner presents no evidence as to how much time had passed between the alleged floormat bunching occurred and the time Gardner fell. The only evidence potentially bearing on Harbor Freight's constructive knowledge as to this particular floormat bunching is the fact that two employees were in that general area of the store and had scanned the entryway immediately before Gardner fell, and that the floormat was close to an area where Harbor Freight employees regularly check for problems with the floormats. This evidence fails to create an issue of material fact regarding Harbor Freight's constructive notice of a bunched floormat. *See also Johnson*, 423 P.3d at 1011 (holding evidence that two employees were in the general area of a particular spill in the store, and that the spill occurred close to the high-traffic area where a company's employee regularly checked for spills, failed to create an issue of material fact regarding the company's constructive notice.)

3. Causation

Furthermore, Gardner has failed to provide evidence of causation. Two of Harbor Freight's employees inspected the area immediately prior to the fall and saw nothing out

of order. Neither Gardner nor her husband saw anything prior to the accident that would suggest the floormat was wrinkled or bunched up. While fact finding is for the jury, the jury would have to speculate on the cause of the fall with the existing evidence and the jury is admonished not to speculate by way of the Court's instructions.

## CONCLUSION

Gardner is the party that has the burden of proof at trial to establish all four elements of negligence. Gardner has not made a showing sufficient to establish the breach of duty or causation elements essential to her negligence claim. There can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Accordingly, the Court grants Harbor Freight's Motion for Summary Judgment.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment, (Dkt. 14), is **GRANTED** as stated herein.

DATED: May 22, 2019

_____
Honorable Edward J. Lodge
U.S. District Judge

ORDER-11